**ORAL ARGUMENT NOT YET SCHEDULED**

# APPEAL NO. 16-7056

————————————

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————————

## MICHELE HALL,

**Appellant,**

**vs.**

## ALICE LEE, et al.

**Appellees,**

————————————

# APPELLANT'S BRIEF

————————————

**ON APPEAL FROM THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

————————————

GREGORY L. LATTIMER, ESQ.
LAW OFFICES OF GREGORY L. LATTIMER, PLLC
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Telephone No.: (202) 434-4513

*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULING AND RELATED CASES

**Parties And Amici**

      Michele Hall - Appellant
      District of Columbia - Appellee
      Alice Lee - Appellee
      Seyhan Duru, Appellee
      Cities, LLC, Appellee

      All parties appeared before the District Court.  There was no Amici before the District Court or this Court.

**Rulings Under Review:**

      The District Court's Orders of November 13, 2014 [Docket Nos. 32 and 33], and  March 31, 2016 [Docket Nos. 54 and 56],granting appellees' motion to dismiss in part and granting appellee's motion for summary judgment and dismissing this action.

**Related Cases:**

      This case was not previously before this court.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii-iv

I. STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................1

II. JURISDICTIONAL STATEMENT ...................................................1

III. STATEMENT OF THE CASE.......................................................1

IV. STATEMENT OF RELEVANT FACTS.............................................2

V. SUMMARY OF ARGUMENT........................................................5

VI.    ARGUMENT

    A. Standard of Review................................................................6

        1. Motion for Judgment On the Pleadings....................................6

        2. Summary Judgment.............................................................7

    B. Absolutely No Basis Whatsoever Existed For
       Judgment On The Pleadings In Any Respect....................................8

    C. Even More Baseless Was The Trial Court's Determination That
       Any Of The Appellees Were Entitled To Summary Judgment.........12

        1. Excessive Force................................................................12

    D. Granting Summary Judgment To Duru And
       Cities, LLC Was Not Only Inconsistent With
       Applicable Law It Was Also A Miscarriage Justice ..........................14

        1.    Calling The Police And Falsely Accusing The Plaintiff
           Of Being A Thief Thereby Causing Her To Be Arrested
           And Handcuffed Is Beyond All Bounds Of Decency ............15

2.    **Negligent Infliction Of Emotional Distress**................17

3.    **Appellant's Claim Of Negligence**................................18

4.    **Appellant's Claim For Conversion**................................21

5.    **There Is Not A Single Undisputed Fact In The Record Of This Proceeding Supporting The Position That The Appellant Was Not Defamed**.........23

E.    **Under Applicable Law Punitive Damages May Be Obtained In Ths Case**........................................................24

VII.    **CONCLUSION**................................................................22

## TABLE OF AUTHORITIES

**Case**:

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)..................................................................................8

*\*Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006)...............................7

*Beverly Enterprises, Inc. v. Herman*, 50 F. Supp. 2d 7, 11 (D.D.C. 1999)...............6

*Busby v. Capital One, N.A.*, 932 F.Supp. 2d 114, 144(D.D.C. 2013).......................23

*\*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)........................................................6, 11

*Dale v. Executive Office of the President*, 164 F. Supp. 2d 22 (D.D.C.2001)...............6

*District of Columbia v. McNeil*, 613 A.2d 940, 942-43 (D.C. 1992)...................17-18

*\*District of Columbia v. Tulin*, 994 A.2d 788, 801-02 (D.C. 2010) ..........................17

*Dyer v. Bergman & Associates, Inc.*, 657 A.2d 1132, 1139 (D.C. 1995).................25

*EEOC. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) .......................................................................................................6

*George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977)...............................................................................6

*Hill v. McDonald* 442 A. 2d 133, 137 (D.C. 1982)...................................................21

*Kowal v. MCI Communications, Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ....6, 11

*Lacy v. District of Columbia*, 424 A.2d 317, 320-21 (D.C. 1980)...........................20

*Longwood Vill. Rest. v. Ashcroft*, 157 F. Supp. 2d 61, 66-67 (D.D.C. 2001)............6

*Morgan v. District of Columbia*, 449 A.2d 1102 (D.C. 1982); rev'd on other grounds 468 A.2d 1306 (D.C. 1983) (en banc).............................18-19

*Richardson v. National Rifle Association*, 871 F. Supp. 499 (D.D.C. 1994)............8

*Smith v. Danielczyk*, 400 Md. 98, 115 (2006) ........................................................23-24

*Tele-Comms. of Key West, Inc.v. United States*, 757 F.2d 1330, 1334-35 (D.C. Cir. 1985)................................................................................................6

*\*Wagshal v. District of Columbia*, 216 A.2d 172, 175 (D.C. 1966)........................19

*Washington Medical Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)....................24

*Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989)...........................................................................8

*Wilkins v. District of Columbia*, 879 F. Supp. 2d 35, 42 (D.D.C. 2012)..............19-21

## Federal Rules of Civil Procedure

*Fed. R. Civ. P. 8..................................................................................................8-9, 11

Fed. R. Civ. P. 56(a) .................................................................................................7

## Miscellaneous

Standardized Civil Jury Instructions for the District of Columbia, 5.02. ..................18

Standardized Civil Jury Instructions for the District of Columbia, § 5.13...............21

Standardized Civil Jury Instructions for the District of Columbia, 13.09.................18

Standardized Civil Jury Instructions for the District of Columbia, §17.14................25

\*  Authority principally relied upon is marked with an asterisk.

## I.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Did the trial court err when it acted as the trier of fact and made factual findings regarding disputed matters?

2. Did the trial court err when it granted summary judgment in favor of the Appellees as to all of the Appellant's claims for relief?

3.  Did the trial court err when it granted the motion of the District of Columbia and Alice Lee for Judgment on the Pleadings, in significant part?

## II. JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. § 1331.  This Court would therefore have jurisdiction under 28 U.S.C. § 1292 as the appeal in this matter is from a final order of the district court.

## III.  STATEMENT OF THE CASE

On March 12, 2013, the plaintiff filed a multi-count complaint against the Appellees.  On November 13, 2014, the trial court inexplicably granted in part and denied in part a motion for judgment on the pleadings filed by Appellees District of Columbia and MPD Officer Alice Lee.  The trial court dismissed all of the Appellant's claims against Appellee District of Columbia.  On March 31, 2016, the trial court issued an order wherein it advised that it was granting the Appellees motions for summary judgment.  On April 13, 2016, the trial court entered a memorandum opinion explaining its previous  order granting summary judgment.

## IV.  Statement Of Relevant Facts

The Appellant was celebrating her birthday on March 17, 2012, and had arranged to have that celebration at Cities, a restaurant and bar in the District of Columbia. She arrived at Cities at about 5:00 p.m.  She provided her name. The person at the door wished her a happy birthday, and took her credit card and ID for incidentals, like food. JA 97-98 (Hall dep at 16-17).

Appellant's friends arrived thereafter and they ordered alcohol and food. Around 9:00 p.m., the waiter, Kamar, brought the plaintiff the bill, even though she had told her that they were not ready to leave.  JA 98 (Hall dep at 19). The Appellant opened the bill, and it was significantly more than she expected. She  asked to speak with the manager, who Kamar identified as Appellee Duru. Duru was extremely arrogant, rude and disrespectful, and was pointing his finger in her face. JA 98 (Hall dep at 20).  This was very unsettling to the Appellant, so she went back to her table. She began to get stressed. She told Kamar, the waiter, to just leave the tab open because she and her party were still working out how to settle everything.

Some of Appellant's other friends were outside and did not want to come into Cities because the cover charge was $40.00 at that time and her party was about to be over. Therefore, they asked her to come across the street to another nightclub "19th" to have a shot with them. Prior to going to the Club19[th], Cities had obtained

-2-

authorization on Appellant's credit card. JA 102 (Hall dep at 36). In fact, Appellee
Cities told Appellant and her party that they had charged her credit card before they
went to 19th. JA 136-138. In actuality, Appellee Cities had run Appellant's credit
card for the amount of purchases, $935.04, at 9:24 p.m. JA 154.

The Appellant and her friend Kay Vollans went to the bathroom shortly after
arriving at Club 19th to fix her makeup. JA 104 (Hall dep at 44-46); JA 139. Shortly
thereafter, Appellee Lee stormed into Club19th, stormed by the patrons in the bar and
kicked in the ladies restroom door. JA 156. The Appellant was trying to relieve
herself in the restroom, and just as she began to pull down her underwear, there was
a knock at the door. She responded by telling the unknown person that "someone's
in here." In response, there was a harder banging and the unknown person stated to
open up, it's the police.

Almost immediately thereafter, the bathroom door, which was locked, was
kicked in and the Appellant was grabbed and slammed against the wall by Appellee
Lee. JA 105-106 (Hall dep at 46-49); JA 140-141. The only thing that Appellee Lee
said was "put your hands behind your back." The Appellant was then handcuffed
and dragged out of the bathroom by Appellee Officer Lee with her feet dragging. JA
105-106 (Hall dep at 46-49); JA 142-143; JA 156. As Appellee Lee rapidly dragged
the Appellant plaintiff through Club 19th , Appellant's personal items were falling on

the ground along the way. JA 143. Once Appellee Lee had the Appellant outside and on the sidewalk, she continued to lift her arms, which were behind her back and her hands were in handcuffs, straight up in the air pointing them towards the sky, as the Appellant pled with her to stop because it was painful.  JA 144-146, 150-151.  The more the Appellant pled with Appellee Lee to stop pushing her handcuffed wrists up in the air, the harder Appellee Lee pushed, JA 150-151, forcing the Appellant to the ground on her knees. JA 146-148, 151; JA 157.  As the Appellant was on her knees, Appellee Lee placed her knee in Appellant's back and pulled her arms up by the handcuffs. JA 158-162. Appellant repeatedly begged Appellee Lee to stop as her actions were causing her pain. JA 151-153. Appellee Lee's only response was to tell Appellant to "shut up." JA 153.

After Gary Jones, a member of Appellant's party, questioned the physical force being used by Appellee Lee, he too was immediately placed in handcuffs with his face shoved into the hood of a car.  JA 162-163. Appellant was placed in the back seat of a police cruiser. Subsequently, a MPD officer brought to her a credit card slip and told her to sign it. After Appellant signed the credit card slip, the handcuffs were removed and she was permitted to leave. The Appellant was held in custody, in handcuffs for about 45 minutes. JA 110 (Hall dep at 68).

The Appellant suffered injuries that she was treated for at George Washington

-4-

University Hospital. She was diagnosed with a right wrist fracture. JA 66, 68, 70. The

Appellant was treated for the fracture and wore a splint for six-weeks. JA 63; JA 115-

117 (Hall dep at 88-96). Gary Jones testified in his deposition that he aksed Appellee

Lee "is this type of force really necessary." JA 162.  Dr. Michael Pirri, the doctor who

examined the Appellant diagnosed her with a fracture of the right wrist and treated

her accordingly. JA 63.

It is against the backdrop of these facts that the trial court granted in part and

denied in part the motion for judgment on the pleadings filed by Appellees District

of Columbia and Lee and the motions for summary judgment filed by the remaining

parties in this case.

## V. <u>Summary Of Argument</u>

The trial Court had no legal basis to dismiss any of the Appellant's claims

pursuant to a motion for judgment on the pleadings.  In addition, there was not a

single undisputed fact that justified the trial court granting summary judgment on any

basis in this case, particularly with respect to her excessive force and assault and

battery claims.

# VI. ARGUMENT

## A. Standard of Review

### 1. Motion for Judgment On the Pleadings

The standard to be applied with respect to a motion for judgment on the pleadings is the same as that under Rule 12(b). *Dale v. Executive Office of the President*, 164 F. Supp. 2d 22, 24 (D.D.C.2001); *Longwood Vill. Rest. v. Ashcroft*, 157 F. Supp. 2d 61, 66-67 (D.D.C. 2001). That is, the motion "should not be granted 'unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.'" *Beverly Enterprises, Inc. v. Herman*, 50 F. Supp. 2d 7, 11 (D.D.C. 1999) (citing *Kowal v. MCI Communications, Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

To that end, a complaint must be construed liberally in the plaintiff's favor and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Tele-Comms. of Key West, Inc.v. United States*, 757 F.2d 1330, 1334-35 (D.C. Cir. 1985). Where the pleadings present disputed questions of material fact, the movant's motion for judgment on the pleadings must be denied. *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977).

## 2. **Summary Judgment**

This Court reviews de novo the district court's granting of summary judgment. *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006), keeping in mind that in general, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In *Arrington*, this Court clearly and succinctly set forth the applicable standard of review:

> We review *de novo* a district court's decision to grant summary judgment. *George v. Leavitt, 366 U.S. App. D.C. 11, 407 F.3d 405, 410 (D.C. Cir. 2005)*; *Kaempe v. Myers, 361 U.S. App. D.C. 335, 367 F.3d 958, 965 (D.C. Cir. 2004)*. Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) ; *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. at 248*. And, with respect to materiality, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

> Although a jury might ultimately decide to credit the version of the events described by defendants over that offered by the plaintiff, "this is not a basis upon which a court may rest in granting a motion for summary judgment." *George, 407 F.3d at 413*. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*. "Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. *Id. at 255*. And, in assessing a motion for summary judgment, a court must view all of the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*; *Kaempe, 367 F.3d at 965.*

It has been consistently held that the moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Richardson v. National Rifle Association*, 871 F. Supp. 499 (D.D.C. 1994). Accordingly, a moving party is entitled to a summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issues of material fact and that the moving parties is entitled to judgment as a matter of law. *Id*.

As all inferences drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party, the defendants' burden is substantial. *Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989).

### B.     Absolutely No Basis Whatsoever Existed For Judgment On The Pleadings In Any Respect

First it must be noted that Rule 8 of the Federal Rules of Civil Procedure reads in relevant part as follows:

-8-

A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

One cannot read the complaint filed by the Appellant, JA , and conclude that probable cause existed for her to be arrested for any offense let alone "theft of services." In fact, paragraphs 16-22, and 29 clearly establish the opposite.

Appellant's complaint establishes, in no uncertain terms, that she went to Cities restaurant, provided the establishment with her credit card and driver's license, to pay for any expenses that she incurred, obtained a stamp from the establishment to come and go as she pleased, left for a short period to go across the street to the 19th Club to have a drink with some other friends, and had every intention of returning to the Cities restaurant to retrieve her belongings including her license and credit card. Before she could do so, Appellee Lee attacked her in the restroom of 19th, handcuffed her, drug her out of the Club, in front of her friends, intentionally tightened her handcuffs so tight that her right wrist was fractured and she suffered nerve damage. The Appellant was placed in the back of a police cruiser by Appellee

-9-

Lee, and was subsequently let out of the vehicle by another officer, who released her

from the handcuffs, brought her the credit card and driver's license and sent her on

her way.

Viewing the complaint in the light most favorable to the Appellant, a

reasonable jury could conclude that the she committed no crime, and that any

reasonable officer that conducted even a cursory investigation would have known that

to be the case, and the fact that the Appellant was released from custody by just such

an officer after conducting a cursory investigation, confirms that very fact.

Nonetheless, the trial court determined that Appellee Lee was entitled to

qualified immunity based solely on the complaint. In so ruling, the trial court

inexplicably stated:

> At the time that officers Doe and Lee arrested plaintiff, they possessed
> information that plaintiff had opened a credit card tab and that she had
> left Cities without paying her tab. Armed with this information, officers
> Doe and Lee could reasonably and prudently conclude that plaintiff had
> violated the law. Even if they were mistaken, they acted under an
> objectively reasonable belief that the arrest was lawful.

JA 56. While the trial court may have deduced this information from someplace, it

most assuredly did not obtain this information from the Appellant's complaint.

Succinctly stated, no legal basis existed for judgment on the pleadings in any respect.

Despite the clearly notice type pleading allowed by Rule 8, the trial court

-10-

dismissed Appellant's negligence claim against Appellee District of Columbia, which states as follows:

> 64. Defendants acted in a negligent and careless manner.
>
> 65. The Defendant's had a duty of care towards the Plaintiff, and they breached their duty by failing to act in a safe and proper manner.
>
> 66. Defendants' negligence proximately caused Plaintiff to suffer serious injury to her right wrist and radial nerve, and to suffer great mental anguish, loss of work and wages. All such injuries, were caused solely by the negligence of the Defendant without any negligence by Plaintiff.

Without any apparent regard for Rule 8, the trial court determined that "These bare assertions are not enough to survive defendants' motion because they do not provide factual allegations to give rise to an inference of negligence." JA58. The trial court plainly did not follow the teachings of *Conley, supra., or Kowal, supra.*, in ruling as it did.

The trial court's determination regarding the motion for judgment on the pleadings filed by Appellees District of Columbia and Alice Lee was erroneous as a matter of law.

-11-

### C.     Even More Baseless Was The Trial Court's Determination That Any Of The Appellees Were Entitled To Summary Judgment

`

### 1.  Excessive Force

The Appellant advised in her deposition that she was slammed against a wall by Appellee Lee, placed in handcuffs that were too tight, and that when she complained about the tightness, Appellee Lee told her to shut up, and then tightened them some more. JA 106 (Hall dep at 49-52). In addition, Ms. Vollans and Mr. Jones made clear in their depositions that Appellee Lee deliberately manipulated the handcuffs of the Appellant to cause her pain, and when she complained, she would deliberately inflict more pain using the handcuffs. JA 144-153; JA157-159. In addition to the deliberate injuries caused to her wrist, the Appellant also had injuries to her chin from being slammed against the wall, injuries to her knees and bruising over several parts of her body that resulted from Appellee Lee's unwarranted assault and use of excessive force. JA 113-114 (Hall dep at 77-84). It is significant to note that the Appellant  never resisted Appellee Lee, never attempted to fight with Appellee Lee in any way, never threatened Appellee Lee in any way, never enlisted anyone to do any of these things in any way, JA 128-129 (Hall dep at 139-41), and no allegation to the contrary has been made.

In fact, Appellee Lee denies that she ever went into the bathroom and contends

-12-

that it was the male officer who actually handcuffed the Appellant. That there is a

stark contrast in the factual positions presented would be an understatement. Yet

somehow, the trial court concluded:

> Like any police officer, Lee had to determine the force necessary to
> make a justified arrest based on all of the information she had
> available—information which included, according to Hall herself, that
> Hall had ignored self-identified law enforcement demands to let them
> into the bathroom stall, tried to stand after Lee had forced her to kneel,
> and moved abruptly, even "swing[ing] around," during the arrest,
> without having been told to. Given this record, no reasonable factfinder
> could conclude that Lee used "clearly excessive" force in executing
> Hall's arrest.

JA 185. Missing from this equation, however, is any suggestion in the record that

Appellee Lee used force against the Appellant because she believed that she was

resisting or that any use of force was necessary. Pointedly, the only reason that

Appellee asserted for summary judgment was her contention that because the

Appellant had not actually suffered a broken wrist, summary judgment was

warranted. In accepting that argument, the trial court ignored the fact that a medical

doctor diagnosed Appellant with a fractured wrist and treated her as if she had a

fractured wrist. JA 63.

The trial court went on further to create facts that would support the use of

force by Appellee Lee even though she never admitted to the use of any force,

justified or otherwise. Pointedly, Appellee Lee's entire motion for summary

judgment was premised on the following issue:

> Plaintiff has no evidence to support her claim that that Ofc. Lee's use of force by handcuffing plaintiff was "clearly excessive."

Mot. at 5 (Dkt No. 43). Obviously, this was not an undisputed fact inasmuch as the Appellant explained how she was slammed against a wall, dragged from a restaurant, placed on the ground with a knee in her back and otherwise tormented by Appellee Lee. Ms. Vollans detailed in her deposition how Appellee caused the Appellant pain, gratuitously, JA 150-153, and so did Gary Jones. JA 156-163. The facts of record clearly indicate that Appellee Lee used force against the Appellant for no apparent reason, and there are no undisputed facts to the contrary. No arguable basis for summary judgment existed as to Appellant's battery or Section 1983 excessive force claims against Appellee Lee.

### D. Granting Summary Judgment To Duru And Cities, LLC Was Not Only Inconsistent With <u>Applicable Law It Was Also A Miscarriage Justice</u>

To put things in perspective, the Appellant accepted a solicitation from a promotor to have Cities host her birthday celebration. Accordingly, she and a number of her friends appeared, socialized, and favored the establishment with significant business. Importantly, upon appearing at the establishment, the Appellant presented a valid credit card and her driver's license so that a tab for her party could

-14-

be run.  After several hours, the Appellant was presented with a bill which she disputed in some respects.  As a result, the Appellant became embroiled in a verbal altercation with Duru, who was identified to her as the manager.  In the meantime, several more of the Appellant's friends showed up at Cities.  They called the Appellant while outside and told her that they were reluctant to come in because there was a $40.00 cover charge.  Consequently, it was agreed that the Appellant, who had a hand stamp for re-entry would meet them across the street for a drink at Club 19th.  The Appellant left several of her friends at Cities along with her birthday gifts, her credit card and her drivers license, as she only intended to be gone for a short while.  When Appellant left Cities, the establishment called the police and falsely reported that there was an "intoxicated female guest refusing to pay bill."  That call was placed on March 17, 2012 at 21:35:07.  JA 166.  However, approximately ten (10) minutes before calling the police, Cities charged Appellant's credit card $935.04 at 21:24:15.  JA 154.  Thus, at the time Cities called the police, a reasonable jury could easily conclude that it knew that what it had reported to the police was false.

### 1.    Calling The Police And Falsely Accusing The Plaintiff Of Being A Thief Thereby Causing Her To Be Arrested And Handcuffed Is Beyond All Bounds Of Decency

The Appellant is mindful that she needs to demonstrate conduct of Appellees Cities and Duru so outrageous in character, and so extreme in degree, as to go beyond

-15-

all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

The Appellant submits that calling the police, more than ten (10) minutes after obtaining authorization on her credit card for the full amount of the purchases that she had made, and falsely advising them that the Appellant had absconded without paying, constitutes outrageous conduct. And in addition, informing the police, once they arrived on the scene, that Appellant's credit card had been declined, JA 169-171, after having obtained authorization for charges of $935.04 to applied to the card only minutes before, was despicable. When these outrageous acts are coupled with the fact that Cities and Duru caused the Appellant to be taken into custody, handcuffed and dragged outside on a public street on her birthday, in front of dozens of her friends, in order to force her, presumably to pay a $169.00 tip, a reasonable jury could easily find that beyond all bounds of decency in a civilized society, is the only way to describe the actions of Cities and Duru.

As to the suggestion that a party may not recover for the intentional infliction of emotional distress because he/she does not obtain medical treatment for her emotional distress, there is no requirement that such treatment be obtained. The Appellant made known in her deposition that the situation still affects her and caused her great anxiety, and made her somewhat of a recluse, JA 120 (Hall dep at 106), and

-16-

she clearly suffered injuries as a result of the Appellees' false representations to the police. In this regard, this case is very similar to *District of Columbia v. Tulin*, 994 A.2d 788, 801-02 (D.C. 2010):

> Mr. Tulin's theory of intentional infliction of emotional distress -- that Detective Rauf's words and actions caused him to be arrested, and subsequently prosecuted without legal justification -- is the only theory of intentional infliction of emotional distress which is supported by the evidence, or which was argued on behalf of Mr. Tulin . . . if the jurors credited Mr. Tulin's testimony, they could fairly find that he suffered severe emotional distress (and plenty of it) in the hours, days and months that followed.

So too could jurors here.

## 2.    <u>Negligent Infliction Of Emotional Distress</u>

The Appellant's emotional distress is not alleged to have been caused by the words and insults that Appellee Duru hurled at her rather, her emotional distress is as a result of the lies that Cities told to the police which caused her to be handcuffed, taken into custody and paraded on a public street as if she were a common thief on her birthday in front of dozens of her friends and acquaintances. Because of the events set in motion by Cities and Duru, the Appellant suffered physical injuries including a fractured wrist and bruises to significant parts of her body.

The law regarding recovery for negligent infliction is as follows:

-17-

> a plaintiff can recover for the separate tort of negligent infliction of emotional distress if the distress results from a direct physical injury or if "plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety." Moreover, if there is physical injury, the injury need not be substantial in order to sustain a tort claim. In the absence of any physical injury, the emotional distress must be "serious and verifiable." [citations omitted].

*District of Columbia v. McNeil*, 613 A.2d 940, 942-43 (D.C. 1992); *D.C. Standardized Civil Jury Instruction* 13.09.

In this case, the Appellant pled negligent infliction of emotional distress in the alternative, should the jury not agree that intentional infliction of emotional distress had been proved. Because she suffered physical injuries, the zone of danger aspect of the claim is not applicable nor is the serious and verifiable requirement for the emotional distress applicable. *Id*.

### 3.    Appellant's Claim Of Negligence

As to the duty owed to the Appellant "Negligence is the failure to exercise ordinary care." *D.C. Standardized Civil Jury Instruction* 5.02.

> the law of negligence generally does not acknowledge differing standards or categories of care, but requires an adherence to a uniform standard of conduct: that of reasonable care under the circumstances .. The applicable standard of care in this case, therefore, is reasonable care under the circumstances, as in every ordinary negligence case. [citations and internal quotation marks omitted].

*Morgan v. District of Columbia*, 449 A.2d 1102 (D.C. 1982); rev'd on other grounds

468 A.2d 1306 (D.C. 1983) (en banc).  Cities and Duru, its manager, were at the very least negligent when they misinformed the police about the true circumstances surrounding the payment of the subject "bill."  As to the suggestion by the Appellees that their action of calling the police and falsely telling them that the Appellant had refused to pay her bill, after obtaining authorization and payment on her credit card for the full amount of her purchases, and then falsely telling the police that Appellant's credit card had been declined, was not a proximate cause of her injuries is not only incredulous, it is legally unsound as well.

Proximate cause which has been defined as:

> that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.

*Wagshal v. District of Columbia*, 216 A.2d 172, 175 (D.C. 1966). The Appellees' claimed that any alleged wrist injury was the result of an intervening cause and not the proximate result of their actions. However, as noted in *Wilkins v. District of Columbia*, 879 F. Supp. 2d 35, 42 (D.D.C. 2012), "Proximate cause has two elements: a causein- fact element and a policy element."

> Proximate cause may be divided into a cause-in-fact (causation) element and a policy element. The cause-in-fact requirement assures that no defendant will be liable unless he has in fact caused the plaintiff's harm. The policy element includes various liability-limiting considerations which relieve the defendant of liability for harm he actually caused

-19-

> where the chain of events appears highly extraordinary in retrospect. [citations omitted].

*Lacy v. District of Columbia*, 424 A.2d 317, 320-21 (D.C. 1980). In the words of

*Wilkins*:

> Questions of proximate cause are usually questions of fact. It is only in a case where the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, that the trial court may rule as a matter of law on . . . proximate cause. This is not the exceptional case[] in which questions of . . . proximate cause pass from the realm of fact to one of law. [citations omitted].

*Wilkins, supra*., at 44. Proximate cause is undoubtedly a jury question in this case as

well. The Appellees called the police, provided them with false information that the

Appellant had essentially committed the crime of theft of services and it is entirely

foreseeable that she would have been taken into custody and that injured in the

process was foreseeable. Situations such as this are why police departments

discourage false crime reports because of just the situation that occurred here, an

innocent person is subjected to an unwarranted seizure. Analogously in *Wilkins*, it

was held:

> a jury could have gone on to conclude that the District's failure to conform to the standard of care for monitoring Mr. Foreman's movements had been a substantial factor in his attack on Mr. Wilkins-- because Mr. Foreman would not have been in a position to attack Mr. Wilkins if he had been properly monitored--and that the danger of such an attack by one inmate on another should have been reasonably anticipated and protected against. Indeed, the danger of such an attack

-20-

is one important reason that penal authorities are under a duty of care. "Where evidence of the failure to adhere to a reasonable standard of care exists, and the 'injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent,' not only is the existence of proximate cause a jury question, but 'the court can . . . allow a certain liberality to the jury in drawing its conclusion.'" [citations omitted].

*Wilkins, supra.*, at 43.  Moreover, there can be more than one (1) proximate of an injury.  *Hill v. McDonald* 442 A. 2d 133, 137 (D.C. 1982); Standardized Civil Jury Instructions for the District of Columbia, § 5.13. Thus, in the District of Columbia, the only requirement is that an action be **a** proximate cause of injury not the only proximate cause.

Granting summary judgment with respect to Appellant's claims sounding in negligence was entirely without merit.

### 4.    Appellant's Claim For Conversion

The Appellant was presented with a bill with which she did not agree at Cities. The Appellant's ID and credit card in the possession of Cities. The Appellant and her friends, who were going to put money in toward the bill, placed money in the "book" containing the bill and gave it to the waiter and asked that he hold that. JA 100 (Hall dep at 27). That money was never returned to the Appellant nor credited to her bill. The Appellant had purchases of $935.04.  Cities obtained authorization for that exact amount at 9:24 p.m. on March 27, 2012. At 9:35 p.m. the Appellees called

-21-

the police and reported that the Appellant had absconded without paying her bill. When the police arrived and placed the Appellant in custody, Cities provided the police with JA 164, which was a bill for the $935.04 in purchases plus an additional amount of $169.70, that was supposedly a "tip." As the Appellant indicated, she was forced to sign for the charges if she wanted to be released as Appellee Duru stood nearby nodding and laughing. JA 101 (Hall dep at 31-32).

Any suggestion that the Appellant **authorized** that payment is preposterous. Under no scenario could it be deduced by a merchant that a customer that he has called the police about, lawfully owes a "tip" of almost $170.00.

Without specifically addressing any other aspect of the trial court's decision in this regarding - - concluding that a party lawfully owes a gratuity, when there is no evidence of record that this was disclosed to the customer beforehand and absent any evidence of any kind from the merchant that it charges a mandatory gratuity to all customers, makes no sense at all. What occurred here was that Cities deliberately took the Appellant's funds and they used the police to do it because they knew that there would be no "tip" after the way that they had treated the Appellant that evening. In addition, Cities got payed twice for the same services.  The Appellant disputed the bill that night, and has filed a lawsuit seeking the return of her money.

In the District of Columbia, conversion has generally been defined as any

-22-

unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of [her] rights thereto. *Busby v. Capital One, N.A.*, 932 F.Supp. 2d 114, 144(D.D.C. 2013). According to Cities and Duru, the Appellant "had no property interest in the $1,104.74 billed to her. Mot. Mem. at 7. Dkt No. 44. The Appellant disputes that position and states that at a the very least there is a dispute about the "tip" of $169.70 that was added to her bill and forced upon her by the police and the fact that she was also billed $935.04 for the same service. Everything that the Cities and Duru said in their motion for summary judgment confirms that they are exercising ownership, dominion and control over the personal property of the Appellant, and deny that she has any right to that property.    No basis for summary judgment as to Appellant's claim for conversion exists, as a matter of law.

### 5.    There Is Not A Single Undisputed Fact In The Record Of This Proceeding Supporting The Position That The Appellant Was Not Defamed

It is undisputed that the police were called and it was reported that the Appellant was intoxicated and refused to pay her bill, which was essentially an allegation that she had engaged in theft of services.  It has never been maintained that if the statement was false, it would not amount to defamation. Clearly, words that falsely impute criminal conduct to a plaintiff are defamatory. *Smith v. Danielczyk*, 400

Md. 98, 115 (2006). Instead, Appellees claimed that the statements made about the Appellant were true. There are no undisputed facts, however, in support that position. JA 154 clearly indicates that Cities obtained authorization and payment on Appellant's credit card at 9:24 p.m. for the exact amount of her purchases. ($935.04). JA 166 just as clearly indicates that more than ten (10) minutes later, Cities called the police at 9:35 p.m. and told the police that the Appellant was refusing to pay her bill. After the police arrived on the scene, the Cities informed the police that Appellant's credit card had been declined and she could not pay her bill. JA 169-171. While the Appellant was in custody, Cities provided the police a charge ticket containing the amount of her purchases $935.04, in addition to $169.70 designated as a "tip." JA 164.

Based on the documented facts, a reasonable jury could find that none of the representations made by Cities and Duru to the police were substantially true and that they were indeed false.

### E. Under Applicable Law Punitive Damages May Be Obtained In Ths Case

Punitive damages for a tortious act are available when the defendant's unlawful conduct was accompanied by "fraud, ill will, recklessness, wantonness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Washington Medical Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990).

-24-

*Dyer v. Bergman & Associates, Inc.*, 657 A.2d 1132, 1139 (D.C. 1995). The alleged facts in this case, if proven, clearly warrant punitive damages. Furthermore, with respect to the issue of defamation, District of Columbia Standardized Civil Instruction §17.14, specifically provides for the award of punitive damages under certain circumstances that a reasonable jury could find present in the case at bar.

## VII.  CONCLUSION

The decision of the trial court to grant judgment on the pleadings, in part, to Appellees District of Court an Lee was inconsistent with applicable law.  In finding that the Appellees were entitled to judgment as a matter of law, the trial court acted as the trier of fact regarding disputed facts. Summary Judgment was clearly not warranted under such circumstances and in fact, reversal of the trial court's determination is more than warranted, it is mandated.

Respectfully submitted,

/s/ Gregory L. Lattimer
Gregory L. Lattimer [371926]
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-4513

-25-

## <u>Certificate of Service</u>

I HEREBY CERTIFY that a copy of the foregoing Brief was served through

the Court's ECF system, on this 14th day of November, 2016 to:

Lucy Pittman
Assistant Attorney General
Office of the Solicitor General
Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001

Served via U.S. Mail, first-class, postage prepaid, to:

Seyhan Duru
1530 Key Blvd. #1121
Arlington, VA 22209

Cities, LLC
c/o Michael Kosmides
1901 K Street, N.W.
Washington, D.C. 20006

  /s/ Gregory L. Lattimer  <br>
Gregory L. Lattimer

**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**<u>F.R.A.P. 32(a)(7)( c) AND CIRCUIT RULE 32(a)(2)</u>**

I certify that pursuant to F.R.App.P. 32(a)(7)( c) and District of Columbia

Circuit Rule 32(a)(2), the attached principal brief is proportionally spaced, has a

typeface of 14 points and contains 6297 words.

　　　　　　　　　　　　　　 /s/ Gregory L. Lattimer　　　　
　　　　　　　　　　　　　　Gregory L. Lattimer